# IN THE SUPREME COURT OF IOWA

No. 10–0113

Filed October 7, 2011

**STATE OF IOWA,**

   Appellee,

vs.

**ROBERT PAUL KROGMANN,**

   Appellant.

---

Appeal from the Iowa District Court for Dubuque County, Lawrence H. Fautsch, Judge.

The defendant appeals his convictions for attempted murder and willful injury. **AFFIRMED.**

Dean Stowers of Stowers Law Firm, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout and Jim Kivi, Assistant Attorneys General, and John Bernau, County Attorney, for appellee.

Matthew McCusker, Seattle, Washington, and Sonia Chopra, Oakland, California, for amicus curiae American Society of Trial Consultants.

**MANSFIELD, Justice**.

Robert Krogmann appeals his convictions, following a jury trial, for attempted murder and willful injury. Krogmann contends the district court erred in granting the State's pretrial request to freeze all his personal assets and requiring that he apply to the court for permission to use those assets for his legal defense. Krogmann also maintains the prosecutor committed reversible misconduct by asking an inflammatory question at trial.

Although we have concerns about the propriety of the asset freeze, we find that Krogmann failed to preserve error. We also find that error was not preserved as to the single incident of asserted prosecutorial misconduct and that this incident would not have amounted to reversible error in any event. For these reasons, we affirm Krogmann's convictions.

## I. Background Facts and Proceedings.

On March 13, 2009, defendant Robert Krogmann, an individual with a history of depression and bipolar disorder, went to the home of his former girlfriend Jean Smith in an attempt to revive their recently ended relationship. While there, he shot Smith three times with a handgun. The first bullet entered Smith's stomach, the second her arm, and the third her spine. According to Smith, Krogmann told her "that if he couldn't have me, no one was going to have me and that we were both going to die there together that day."

Krogmann then called his son Jeff and told him what he had done. Jeff rushed to Smith's house dialing 911 while en route. When Jeff arrived, he found Smith lying on the floor with her robe soaked in blood. Jeff convinced his father to turn over the gun.

Krogmann was arrested shortly thereafter. On March 23, 2009, the State charged Krogmann with one count of attempted murder, a

class "B" felony, and one count of willful injury causing serious injury, a class "C" felony. *See* Iowa Code § 707.11 (2009) (attempted murder); *id.* § 708.4(1) (willful injury causing serious injury).

On March 24, 2009, the State applied for an order freezing all of Krogmann's assets. The unverified application stated that Smith had suffered severe injuries necessitating lengthy hospitalization, that Krogmann would be required to reimburse the victim for out-of-pocket expenses associated with hospitalization and after-care, that Krogmann would be subject to civil litigation, and that Krogmann "has a number of assets that he may attempt to sell or transfer to avoid his financial obligations to the victim of his offenses."

On March 30, 2009, the district court entered the requested order freezing all of Krogmann's roughly $3.4 million in assets.[1] The order said:

> All of the Defendant's assets shall be frozen. The Defendant shall make application to the Court for the sale or transfer of an asset at which time the Court will determine whether good cause has been shown to grant the application.

Because of a mailing error by the county attorney, Krogmann's attorney did not receive notice of the State's application until March 30, 2009. Unaware that the court had already granted the State's requested order, Krogmann filed a resistance on April 2, 2009. The resistance stated, in its entirety:

> COMES NOW the Defendant, by counsel, and hereby resists the State's application for order, and in support thereof states:

---

[1]The initial report and inventory prepared by the conservator indicated that Krogmann, a farmer, had approximately $3.3 million in assets—$2,758,000 in real estate; $18,834.84 in mortgages, notes, deposits and cash; and $520,912.53 in miscellaneous property, largely farm products and equipment. A subsequent court order referenced an updated inventory of "approximately $3.4 million."

1. The State asks the Court to freeze Defendant's assets.

2. The State has cited no authority for such nor does any exist.

3. Should the Court deem hearing necessary on the State's application, the undersigned will not be available for hearing for one and one half weeks starting 4/6/09 due to being in trial in federal court.

WHEREFORE, Defendant prays the Court deny the State's application for order, and prays for such further and other relief as may be fair and just.

The district court took no action on Krogmann's resistance, so on April 28, 2009, he filed an application for interlocutory appeal with this court. In that application, Krogmann pointed out that the district court had frozen his assets without a hearing and had cited no authority in its order. Krogmann argued that the district court "acted without authority," citing *State ex rel. Pillers v. Maniccia*, 343 N.W.2d 834 (Iowa 1984). He also maintained that the district court violated his "right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution."

Krogmann's application was treated as one for discretionary review and denied by this court on May 26, 2009.

Krogmann's bond was initially set at $750,000 cash only but was increased to $1 million cash only on June 1, 2009. To manage his frozen assets in accordance with the court order while he was in jail, Krogmann voluntarily established a conservatorship on April 13, 2009, naming an attorney (not his criminal defense lawyer) as conservator. Because of the asset-freeze order and the conservatorship, disbursement requests had to be made by the conservator and then approved by the probate court.[2]

---

[2]The order appointing conservator provided, "The Conservator appointed hereunder shall adhere to the Order of the District Court in the criminal case and make application to the Court for authority to sell or transfer any assets other than in the

Thus, court permission was required to pay legal fees and other defense-related expenses.

This process led to some delays in payments to Krogmann's defense lawyer. Also, two specific defense-related requests were rejected by the probate court after having been resisted by either Smith or the State. On July 20, 2009, following Smith's objection, the court denied Krogmann's request to use his farmland as security to post bail. Then, on October 30, 2009, following State objections, the court denied Krogmann's request to expend funds on a jury consultant.

At the October 27, 2009 pretrial conference preceding the criminal trial, the parties discussed the jury consultant at some length. Krogmann's defense attorney explained his plan to use the consultant to assist with jury selection. The State countered that the consultant would be "a luxury, not a necessity." Ultimately, the district court decided that the defendant would be allowed to use the consultant if he were able to retain one. The State then filed an objection in the probate court the next day, reiterating its view that funds for a consultant should be denied because "a jury consultant is consider[ed] a luxury rather than a necessity" and the defendant has no "right" to a jury consultant. On October 30, 2009, the probate court[3] denied the request for jury consultant funds without explanation. Accordingly, Krogmann proceeded to trial on November 2, 2009, without a jury consultant.

Because there had been a change of venue, Krogmann went to trial in Dubuque County. Krogmann presented a diminished capacity

---

normal course of the farming operation where the transfer is made for good and valuable consideration."

[3]The same judge who had conducted the pretrial conference and who would preside over the criminal trial the following week denied this request in his capacity as probate judge.

defense. The jury did not accept the defense and found him guilty of both charges on November 6, 2009. Krogmann was subsequently sentenced to a term of incarceration of up to twenty-five years for the attempted murder and a term of incarceration of up to ten years for the willful injury, with the terms to run consecutively.

Separate from the asset-freeze order, the State had also filed a criminal restitution lien under Iowa Code section 910.10 (2009) on June 18, 2009. Following his convictions, Krogmann was ordered to pay $35,570.14 in restitution to Smith and $18,219.54 in restitution to the Delaware County Sheriff's Department and the State for its prosecution expenses.

Krogmann filed a notice of appeal on January 14, 2010. On appeal, Krogmann argues that the asset freeze was contrary to Iowa law and also violated his constitutional rights to due process, to be free from unreasonable seizures, and to counsel. Additionally, Krogmann argues that the State deprived him of the right to a fair trial when it asked him during cross-examination, "Shot anybody today?"

**II. Standard of Review.**

In considering alleged violations of constitutional rights, our standard of review is de novo. *State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010). "[W]e make an independent evaluation [based on] the totality of the circumstances as shown by the entire record." *State v. Brooks*, 760 N.W.2d 197, 204 (Iowa 2009) (internal quotation marks omitted). "Each case must be evaluated in light of its unique circumstances." *Id.*

"A temporary injunction is a preventive remedy to maintain the status quo of the parties prior to final judgment and to protect the subject of the litigation." *Lewis Invs., Inc. v. City of Iowa City*, 703

N.W.2d 180, 184 (Iowa 2005) (internal quotation marks omitted). Our review is for an abuse of discretion. *Id.* The decision to issue a temporary injunction "requires great caution, deliberation, and sound discretion." *PIC USA v. N.C. Farm P'ship*, 672 N.W.2d 718, 722 (Iowa 2003) (internal quotation marks omitted). We usually will not overturn such a decision unless there has been an abuse of discretion or violation of a principle of equity. *Id.*

Prosecutorial misconduct claims are reviewed for abuse of discretion. *State v. Jacobs*, 607 N.W.2d 679, 689 (Iowa 2000). Abuse is found if "a court acts on grounds clearly untenable or to an extent clearly unreasonable." *State v. Leckington,* 713 N.W.2d 208, 216 (Iowa 2006).

### III.  The Asset Freeze.

The threshold question we must answer is whether Krogmann preserved error in the district court on his objections to the asset freeze. As noted by the State, Krogmann filed only a one-page resistance to the State's application in the district court, after the application had been granted, in which he argued that no authority existed for the asset freeze. Although Krogmann later filed a slightly more detailed application for interlocutory appeal, that filing was with our court, not the district court. Krogmann never supplemented his original resistance in the district court. After learning the district court had granted the State's application *before* receiving his resistance, Krogmann made no effort to urge the district court to withdraw its order nor did he seek a hearing before the court.

The doctrine of error preservation has two components—a substantive component and a timeliness component. Krogmann had to alert the district court to his specific objections, and he had to do so in a timely manner. In this case, Krogmann's one-page resistance said only

that "[t]he State has cited no authority for [the asset freeze] nor does any exist." Krogmann did not raise any of the constitutional arguments that he presents in his current appeal. In fact, he did not even argue to the district court that the asset freeze was unconstitutional. This was insufficient to preserve error on his constitutional arguments. *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) (stating that "[a] party challenging the constitutionality of a statute must alert the court to what specific constitutional provisions are allegedly compromised by the statute" (internal alteration and quotation marks omitted)).

Krogmann did insist there was "no authority" for the asset freeze. Some time ago, in *Maniccia*, we held that a district court could not enter an injunction barring a person charged with a crime from disposing of property that might otherwise be used to reimburse the crime victim or the county. 343 N.W.2d at 834. As we put it, "[A] court of equity has no inherent power to issue the injunction requested by petitioner." *Id.* at 835. The only difference here is that the State sought the order within the criminal case, instead of filing a separate civil action for injunctive relief.

Also, the State has the statutory right to seek a criminal restitution lien to protect both its interests and those of the victim. *See* Iowa Code § 910.10.[4] Indeed, it requested and received such a lien. Under these circumstances, one might well question the State's ability to obtain

---

[4]Section 910.10(1) provides, "The state or a person entitled to restitution under a court order may file a restitution lien." The restitution lien must set forth certain information, including "[t]he amount of restitution the person has been ordered to pay or is likely to be ordered to pay." Iowa Code § 910.10(2)(*g*). As noted above, Krogmann's judgment and sentence required him to pay approximately $36,000 in victim restitution and $18,000 in restitution to the State.

inherent injunctive relief beyond the statutory remedy already afforded by section 910.10.[5]

But our regular error preservation rules also require parties to alert the district court "to an issue at a time when corrective action can be taken." *Top of Iowa Co-op. v. Sime Farms, Inc.,* 608 N.W.2d 454, 470 (Iowa 2000). Krogmann failed to do this. Upon learning that the district court had already entered the asset freeze, he never requested a hearing nor sought dissolution of the order.[6] Krogmann was aware the district court had failed to rule on his objection to the asset freeze before granting it. Yet he never sought out the court and requested a ruling on that objection. "There is no procedural rule solely dedicated to the preservation of error doctrine, and a party may use any means to request the court to make a ruling on an issue." *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002). Still, when a court fails to rule on a matter, a party must request a ruling by some means. *Id.*

Krogmann refers us to other filings where he raised objections to the asset freeze.[7] Yet for various reasons, we find those filings insufficient to preserve error. First, Krogmann refers us to his April 28,

---

[5]The State notes on appeal that section 910.10(5) provides, "This section does not limit the right of the state or any other person entitled to restitution to obtain any other remedy *authorized by law*." (Emphasis added.) Still, this begs the question of how the asset freeze was "authorized by law."

[6]Had this been a temporary injunction in a civil case, the rules make it clear that a motion to dissolve would be an appropriate procedural avenue:

> A party against whom a temporary injunction is issued without notice may, at any time, move the court where the action is pending to dissolve, vacate or modify it. Such motion shall be submitted to that court. A hearing shall be held within ten days after the filing of the motion.

Iowa R. Civ. P. 1.1509.

[7]After oral argument, Krogmann submitted a document entitled "supplemental record references" to support his assertions of error preservation. The State moved to strike this filing but also responded to it. We deny the motion to strike but have considered both the "supplemental record references" and the State's response to them.

2009 application for an interlocutory appeal and a stay of the freeze order. That application mentioned the lack of a prior hearing, *Maniccia*, and the Fourteenth Amendment right to due process. That application, however, was directed at us, not the district court. While Krogmann apparently mailed an informational copy to the district court clerk, he did not request the district court to take action.

Next, Krogmann calls attention to his postverdict motion for new trial. In that motion, Krogmann argued as grounds for new trial that he could not hire a jury consultant because of the asset freeze and that his due process rights were violated when defense counsel needed additional funds and a hearing had to be held "via the conservatorship." However, a motion for new trial is not the appropriate time to raise matters for the first time that could have been raised earlier. *See Hobbiebrunken v. G & S Enters., Inc.*, 470 N.W.2d 19, 23 (Iowa 1991); *State v. Winquist*, 247 N.W.2d 256, 259 (Iowa 1976). We have previously held that a defendant cannot await the outcome of a jury trial "and then raise an issue of which he was aware from the beginning." *State v. Traywick*, 468 N.W.2d 452, 455 (Iowa 1991); *accord State v. Jackson*, 397 N.W.2d 512, 514 (Iowa 1986).

Krogmann also points us to a motion to continue trial that he filed shortly before the November 2, 2009 trial date. In that motion, he raised the Sixth Amendment to the U.S. Constitution. However, his argument there was that denying a *continuance* would deprive him of rights guaranteed by the Sixth Amendment. The motion did not even mention the asset freeze.

Lastly, Krogmann directs us to several filings and developments in the conservatorship proceeding, not the criminal case. As noted, shortly after the district court issued the order in the criminal case freezing his

assets, Krogmann voluntarily established a conservatorship. Thereafter, the conservator had to obtain probate court approval whenever additional funds were needed for Krogmann's defense. On September 2, 2009, Krogmann's defense counsel responded directly when the victim objected to the conservator's request for additional criminal defense funds, stating that such objections "chill[ed]" his defense. On September 18, the probate court ruled that it "will not refuse to pay these sums as the Defendant has a right to competent counsel under the Sixth Amendment . . . ." On October 20, 2009, the conservator submitted a letter from Krogmann's defense counsel to the probate court invoking this language and requesting additional money.

While these events illustrate certain effects of the asset-freeze order, they cannot be deemed objections to the order itself. Also, they were filed in a separate proceeding, the conservatorship, not the criminal case.

On a related note, Krogmann emphasizes that the probate court denied permission for him to use his personal assets as security for bail and to hire a jury consultant. If this were an appeal in the conservatorship, we might be able to review those particular rulings. Since this appeal is from the judgment in the criminal case, however, those matters are relevant only as consequences of the asset freeze. As we have noted, Krogmann did not make a timely or sufficient objection to that freeze.[8]

Our determination that Krogmann has failed to preserve error does not mean we approve of the asset freeze. We are troubled by the State's

---

[8]Krogmann has not pursued an ineffective assistance counsel claim on this appeal relating to the asset freeze or the conservatorship. Our opinion does not preclude Krogmann from pursuing such a claim in the context of a postconviction relief proceeding.

effort to tie up a criminal defendant's personal assets without citing any rule or statute, without making a verified filing, and without citing the district court to relevant authority (*Maniccia*). We are also troubled by the State's attempts to use the asset freeze, once it was in place, to object to defense expenditures not on the ground they would jeopardize restitution or other victim compensation (the alleged reasons for the asset freeze), but simply because the State deemed them unnecessary.

**IV. Krogmann's Claim of Prosecutorial Misconduct in the Criminal Trial.**

We turn now to Krogmann's argument that he was denied a fair trial due to prosecutorial misconduct. When Krogmann took the stand in his own defense, he testified that he had been diagnosed with bipolar disorder, had suffered from depression, and had at times been hospitalized. He also testified that on March 13, 2009, he had no intent to hurt Jean Smith but was "quite depressed" and had been "suicidal just two days previous." Krogmann also mentioned attempts to commit suicide after he was arrested.

The State's cross-examination of Krogmann then began as follows:

Q. Mr. Krogmann, you were suffering, you said, from bipolar disorder on March 13th? A. I was suffering from depression, bipolar is my—I'm diagnosed bipolar but I would say I was very depressed.

Q. And today you're suffering from bipolar; isn't that correct? A. When you—when you have bipolar, you—you try to medicate or you try to be medicated by medications.

Q. Sir, excuse me, my question was: You have that disease today? A. I have bipolar, yes.

Q. Okay. Shot anybody today?

MR. BROWN: Your Honor, I object.

MR. KIVI: I'll withdraw that question.

MR. BROWN: It's argumentative.

THE COURT: Sustained.

Krogmann argues that the question, "Shot anybody today?" was highly inflammatory and necessitates a new trial. We do not believe, however, that Krogmann has preserved a claim of prosecutorial misconduct. He objected only that the question was argumentative; the district court sustained the objection and the question was withdrawn; Krogmann then asked for no further relief such as a mistrial. Krogmann cannot obtain a new trial based on prosecutorial misconduct when he failed to move for a mistrial at the time. *State v. Radeke*, 444 N.W.2d 476, 479 (Iowa 1989); *State v. Dahlstrom*, 224 N.W.2d 443, 449 (Iowa 1974). Based on the exchange quoted above, the district court had no reason to believe that Krogmann wanted anything further done with respect to the prosecutor's improper question.

Furthermore, to prevail on a claim of prosecutorial misconduct, the defendant must show both the misconduct and resulting prejudice. *State v. Ruble*, 372 N.W.2d 216, 218 (Iowa 1985). We consider:

> "(1) the severity and pervasiveness of misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; (5) the extent to which the defense invited the misconduct."

*State v. Boggs*, 741 N.W.2d 492, 508–09 (Iowa 2007) (quoting *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) (internal citations omitted)). The most significant factor is the strength of the State's evidence. *Id.* at 509. "Prejudice can, but usually does not, result from isolated prosecutorial misconduct." *State v. Anderson*, 448 N.W.2d 32, 34 (Iowa 1989). "Ordinarily a finding of prejudice results from [p]ersistent efforts

to inject prejudicial matter before the jury." *State v. Webb*, 244 N.W.2d 332, 333 (Iowa 1976).

In this case, the prosecutor's questioning was directed toward a legitimate trial theme: If Krogmann's mental condition was such that he lacked capacity to commit attempted murder on March 13, 2009, how could he function satisfactorily on other occasions despite the same mental condition? Still, the phrasing of the question was inflammatory and improper. However, we do not believe this isolated incident of misconduct was so severe or pervasive that it affected Krogmann's right to a fair trial. We think it unlikely that the prosecutor's "glib" and "sarcastic"[9] treatment of a tragic incident would have scored many points with the jury; it is just as likely, in our view, that it would have offended them.[10] We find no reversible error.

## V. Conclusion.

For the foregoing reasons, we affirm Krogmann's convictions.

**AFFIRMED.**

All justices concur except Zager, J., who takes no part.

---

[9]We borrow these adjectives from the State's own appellate brief.

[10]In fact, Krogmann's counsel tried to use this question against the State during his closing argument. This effort stopped when the prosecutor objected and the district court sustained the objection.