**IN THE COURT OF APPEALS OF IOWA**

No. 13-0401
Filed June 25, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES E. FARNSWORTH II,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, Colleen D.

Weiland, Judge.

        James Farnsworth appeals his conviction for second-degree murder.

**AFFIRMED.**

        David A. Roth of Gallagher, Langlas & Gallagher, P.C., Waterloo, for

appellant.

        Thomas J. Miller, Attorney General, Kyle P. Hanson and Susan Krisko,

Assistant Attorneys General, and Carlyle D. Dalen, County Attorney, for appellee.

        Heard by Vogel, P.J., and Doyle and Tabor, JJ.

**VOGEL, P.J.**

James Farnsworth appeals his conviction for second-degree murder. Farnsworth asserts three bases of error: (1) the State engaged in prosecutorial misconduct when it referenced Farnsworth's conduct earlier in the evening, prior to the fight in which he stabbed the victim; (2) the district court abused its discretion when it granted the State's motion to strike a prospective juror for cause; and (3) Farnsworth's *Miranda* rights were violated when the State introduced evidence of his statements to police. We conclude Farnsworth failed to preserve error on both his prosecutorial misconduct and *Miranda* claims. We further conclude the district court did not abuse its discretion when striking the prospective juror for cause. Consequently, we affirm Farnsworth's conviction.

**I. Factual and Procedural Background**

Several witnesses to the details of this incident testified, each relating slightly different facts depending on their proximity to certain actions. None, however, contradicted another. Based on this testimony, the jury could have found the following facts. On April 13, 2012, Farnsworth, his girlfriend, Victoria Miller, and several others were at the apartment of Echo Dority. The group then decided to go to a local bar. At the bar, Miller received a text of a smiley face from her ex-boyfriend, Ian Decker, who is also the father of her child. Farnsworth and Miller argued, and Farnsworth slapped Miller. Miller then told Farnsworth she was "done with him" and that he should leave. With the encouragement of others in the group, Farnsworth left.

Not long after that, the group decided to go back to Dority's apartment. Farnsworth was waiting around the corner from the bar. Miller ignored

Farnsworth and others told him to leave. Undeterred, Farnsworth followed the group, which continued to largely ignore his presence. When Farnsworth approached Miller, Dority kicked Farnsworth in the crotch, causing him to fall to the ground. Farnsworth got up and ran to Dority's apartment, arriving ahead of the group.

Dority did not allow Farnsworth to enter her apartment. In an effort to talk with Miller, Farnsworth sent her numerous text messages. Miller replied, telling him to leave and that "[e]veryone wants to beat the f*** out of you." Farnsworth threatened to kill himself and walked away from the door and out of sight of those in the apartment.

Dority and Miller went outside the apartment to wait for Decker, whom Dority had invited. After Decker's arrival, Farnsworth came from around the corner and made a request to speak with Miller, which she refused. Miller and Decker told Farnsworth to leave, so he got in his car and drove quickly away. However, a few minutes later, Farnsworth "came barreling back down the street" as other guests, Alyssa Fullerton and Derek Wentworth, were leaving the apartment. Miller and Wentworth told Farnsworth to leave. Farnsworth approached Miller, and Wentworth stepped between the two. After Miller informed Farnsworth she did not want to speak with him, Farnsworth stated: "If Ian [Decker] tries anything, I'm going to f****** stab him."[1]

Decker was standing around the corner of the apartment building. Upon hearing Miller and Farnsworth arguing, Decker appeared to be very angry. He

---

[1] At trial, Miller testified she knew Farnsworth kept a knife in the center console of his car, but that, to her knowledge, he never carried the knife in his pocket.

walked around the corner and began fighting with Farnsworth. It was not disputed that Decker threw the first punch. Miller tried to warn Decker by yelling, "[S]top, [Decker], he has a knife." The two continued fighting and grappled on the ground but both got back up. At one point, Decker was hunched over Farnsworth, but Farnsworth was able to throw Decker off of him. When Decker stood up, he lifted his shirt to reveal blood streaming down his chest and onto the sidewalk. Decker collapsed; Miller and Dority applied pressure to his chest wound. Farnsworth stood there briefly, then got in his car and sped away. It was later revealed Decker had been stabbed once in the ribs, once in the thigh, and had a cutting wound on his left forearm. Although police and paramedics quickly arrived, Decker died at the scene from the stab wound in his side, which had pierced his heart.

Police stopped Farnsworth shortly after he drove away. Farnsworth was cooperative and informed police the knife was in his center console. When asked what happened, Farnsworth replied Decker had punched him four or five times, prompting Farnsworth to pull the knife from his pocket and "[fling] it around." Although Farnsworth had some visible injuries, he refused medical treatment and was transported to the police station. Farnsworth later complained about being dizzy, and was then taken to the hospital. A neurological exam revealed the absence of a head injury, and though the doctor thought perhaps Farnsworth's nose was broken, Farnsworth refused to have X-rays taken and declined further treatment.

Farnsworth was charged with murder in the second degree on April 20, 2012, in violation of Iowa Code sections 707.1 and 707.3 (2011). A jury trial was

held, and on January 17, 2013, the jury returned a verdict of guilty. Farnsworth appeals.

## II. Error Preservation

To preserve error on appeal, the party must first state the objection in a timely manner, that is, at a time when corrective action can be taken, in addition to the basis for the objection. *State v. Krogmann*, 804 N.W.2d 518, 524 (Iowa 2011) (holding a one-page resistance that stated there was no legal basis for the State's actions did not properly preserve error with respect to the defendant's constitutional claims). This reflects both the substantive and timeliness components of error preservation. *Id.* at 523. The court must then rule on the properly raised objection. *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). "If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Id.* (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002)).

### A. Prosecutorial Misconduct

Farnsworth first asserts the State engaged in prosecutorial misconduct when it argued that the relevant portion of time regarding whether Farnsworth was the initial aggressor included the events of the evening, preceding the ultimate altercation. He also claims that, during its closing arguments, the State prejudicially misled the jury regarding the law of justification and whether Farnsworth had an alternative course of action under the law.

However, at no point during the trial did Farnsworth claim the State engaged in prosecutorial misconduct, or otherwise object to the statements he

now contests on appeal. Even his generic post-trial motion was too late to preserve error. *See Krogmann*, 804 N.W.2d at 524. Farnsworth cannot obtain a new trial asserting prosecutorial misconduct when he failed to move for a mistrial at the time the alleged prosecutorial misconduct occurred. *See id.* at 526. By not objecting or otherwise alleging prosecutorial misconduct at the time of trial, Farnsworth failed to preserve error.

However, regardless of the error preservation issue, Farnsworth's argument regarding prosecutorial misconduct fails. To prevail on this claim, Farnsworth must show both that misconduct occurred and that he was so prejudiced by the error he was deprived of a fair trial. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). Primarily, Farnsworth cannot show the prosecutor improperly referenced his conduct from earlier in the evening, that is, slapping Miller at the bar. The jury must consider the complete story of the crime in deciding whether Farnsworth started or continued the incident, as required of a justification defense. *See State v. Shortridge*, 589 N.W.2d 76, 83 (Iowa Ct. App. 1998). Consequently, there was no prosecutorial misconduct when the State introduced evidence of the events leading up to the altercation. Moreover, Farnsworth failed to demonstrate prejudice occurred when the prosecutor stated Decker "had been seriously provoked by the fact that the defendant was speaking to Miller." The jury received the proper instruction defining serious provocation. Furthermore, this was only relevant to the lesser included offense of voluntary manslaughter, which was not the crime of which Farnsworth was convicted. Therefore, this argument also fails.

**B*. Miranda* Violation**

Farnsworth next argues the State unconstitutionally used his silence—or lack of response—against him, resulting in a *Miranda* violation. The State questioned the officer who apprehended Farnsworth as to whether Farnsworth made any statements that would support his defense of justification.[2] However, Farnsworth did not file a motion to exclude this evidence or object to its introduction at trial. This argument was thus never considered by the trial court, and Farnsworth failed to preserve error. *See Lamasters*, 821 N.W.2d at 864.

Moreover, even if we were to address the merits of Farnsworth's claim, it would fail. Farnsworth asserted he acted in self defense. The State did not use Farnsworth's silence after his receipt of *Miranda* warnings to impeach his justification claim, a strategy that would result in a *Miranda* violation. Rather, the State engaged in a proper cross-examination by using Farnsworth's voluntary statements to police concerning his involvement in the incident to impeach his claim. *See State v. Metz*, 636 N.W.2d 94, 97 (Iowa 2001) ("[T]he Fifth Amendment guaranty against self-incrimination prohibits impeachment on the basis of a criminal defendant's silence after receipt of *Miranda* warnings."); *see*

---

[2] Specifically, the following exchange occurred:

> Q: What's the first thing that the defendant says that you can recall about what had happened? A: He ran at me because I'm dating his ex-girlfriend, slash, baby's mama. He ran at me and punched me four to five times. My right hand was in my pocket, and that's where my knife was. I pulled it out and flung it around. That's when he fell down. He then said—I apologize for my language—I f***ing put it back in my pocket and I left.
>
> Q: Is that his entire statement regarding what he told you? The first statement that he ever made to a police officer, is that exactly what he said? A: Yes.
>
> Q: Did he say that he had acted in self-defense? A: No.
>
> Q: Did he say that he was scared? A: No.
>
> Q: Did he ask about Ian Decker? A: No.

*also Anderson v. Charles*, 447 U.S. 404, 408 (1980) (holding there is no *Miranda* violation when the prosecutor engages in cross-examination that "merely inquires into prior inconsistent statements"). Consequently, no *Miranda* violation occurred.

## III. Juror Strike

Farnsworth's final claim is the district court abused its discretion by granting the State's challenge for cause. Farnsworth asserts he was prejudiced by this decision because the State was then able to exercise more of its peremptory strikes, which he asserts resulted in a biased jury.

We review the district court's ruling on a challenge for cause for an abuse of discretion. *State v. Hardin*, 498 N.W.2d 677, 681 (Iowa 1993). The test to be applied in a ruling on challenges for cause is "whether the juror holds such a fixed opinion on the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant." *State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993) (internal citation omitted).

During voir dire, one prospective juror stated that his son had been convicted of drug charges and "did not get treated fairly at all" when sentenced. When asked if he could set aside his perception of his son's treatment, the juror responded "I would have a hard time convicting this young man. I would." He also stated that he would have to be "thoroughly convinced" of Farnsworth's guilt. When asked whether the State and Farnsworth would begin the trial on a level playing field, the juror stated Farnsworth was "off to a head start with me." He said it would have to be "hands down" and "no doubt." When inquiring further into whether the juror would be able to apply the beyond-a-reasonable-doubt

standard of proof, he responded that he "would have a very difficult time doing that."

In granting the State's motion to strike this juror for cause, the district court stated:

> I'm pretty uncomfortable with [this prospective juror]. When he's asked specific questions by [defense counsel], he says "yes" but he backtracks immediately when [the State] is asking him questions and his body language is telling me he's not—his body language is telling me he's finding a way to acquit despite what evidence might or might not be.

The court further noted this juror said he would not follow the law regarding the State's burden of proof.

We find no abuse of discretion in the court's decision to strike this juror for cause. The juror clearly indicated his bias toward the defense. This is enough to show he could not "judge impartially the guilt or innocence of the defendant." *Id.* Consequently, we affirm the decision of the district court.

Having considered all issues properly preserved for appeal, we affirm Farnsworth's conviction.

**AFFIRMED.**